DJW/bh

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BARBARA BALFOUR, et al.,

                      **Plaintiffs,**

                                                          CIVIL ACTION

v.

                                                          No. 05-2086-KHV-DJW

**MEDICALODGES, INC.,**

                      **Defendant.**

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' Motion to Compel Discovery (doc. 160). For the reasons set forth below, the Court will grant the Motion in part.

**I.    Introduction**

This is an employment action brought by four former employees of Defendant. Three of the Plaintiffs were employed as Licensed Practical Nurses, while the fourth was a Certified Medication Aide. Defendant is a long-term care provider that operated the Alzheimer's Center of Kansas City ("Alzheimer's Center") during the term of Plaintiffs' employment.

Plaintiffs allege, *inter alia*, state law claims for wrongful discharge in violation of public policy. More specifically, Plaintiffs claim they were terminated for reporting alleged violations or rules, regulations or laws they witnessed while working at the Alzheimer's Center. Plaintiffs also allege that they were terminated for refusing to perform illegal acts.

Plaintiffs have moved to compel answers to Plaintiff Balfour's Second Requests for Production No. 16-19 and Balfour's Sixth Requests for Production No. 6-8. The requests seek the records for seven individuals who were patients at the Alzheimer's Center at various times during

Plaintiffs' employment there. The requests, which are identical, seek "[a]ll records regarding [patient ___] including without limitation all clinical records, nurse's notes, MAR entries, doctor's orders, incident reports and data entered into Compudata."

Defendant objected to the requests on the basis of relevance. Defendant also objected that the requests seek confidential patient health care information, for which Plaintiffs have not obtained releases from the patients and which Defendant has a legal duty to keep confidential.

In their reply brief, Plaintiffs have withdrawn that portion of the Motion to Compel which applies to the records of patients H. B. and R. C.[1] Thus, the only requests that remain at issue are those seeking the records of patients C. O., G. S., J. M., L. P., and N. F.

## II. Analysis

The Court will first examine the relevancy of the requested records. For those records the Court deems relevant, the Court will address Defendant's confidentiality objections.

### A. Relevance

*1. Standard for determining relevance*

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[2] Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the

---

[1] The parties have used the initials of these patients, rather than their names, to protect the patients' privacy.

[2] Fed. R. Civ. P. 26(b)(1).

information sought may be relevant to the claim or defense of any party.[3]  A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[4]

When the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure.[5]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[6]

With these standards in mind, the Court will proceed to determine whether the requested patient records are relevant.

### 2. Patient J. M.

Patient J. M. was a resident of the Alzheimer's Center from December 5, 2000 through January 6, 2005.  Plaintiffs initially sought J. M.'s records for that entire period; however, in their reply brief Plaintiffs have agreed to narrow their request to the period January 2003 through January

---

[3] *Cardenas v. Dorel Juvenile Group, Inc.,* 230 F.R.D. 611, 615 (D. Kan. 2005); *Owens v. Sprint/United Mgmt. Co.,* 221 F.R.D. 649, 652 (D. Kan. 2004); *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001).

[4] *Cardenas,* 230 F.R.D. at 615; *Owens*, 221 F.R.D. at 652; *Sheldon*, 204 F.R.D. at 690.

[5] *Cardenas,* 230 F.R.D. at 615-16; *Owens*, 221 F.R.D. at 652; *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[6] *Cardenas,* 230 F.R.D. at 616; *Owens*, 221 F.R.D. at 652; *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000).

3

2005.  Plaintiffs contend that these records are relevant to Plaintiff Balfour's whistleblower claim. Balfour alleges she was terminated, in part because she complained of an unsecured cabinet at the Alzheimer's Center.  She alleges she warned Defendant in October or November 2003 to properly secure the cabinet because Alzheimer's patients have a tendency to pull on fixtures.  In early December 2003, patient J. M. pulled a cabinet on top of himself and suffered a broken leg.  Balfour claims that when she learned of his injury she repeatedly expressed to management her concern and frustration that her warning was not heeded.

The Court notes that Balfour asserts an additional claim to which these records arguably may be relevant.  This is a claim for wrongful discharge in violation of public policy based on Balfour's alleged refusal to commit an illegal act.  Balfour alleges in the Pretrial Order that she was terminated in part because "she refused to perform the illegal act of keeping quiet about Defendant's neglect of [J. M.] who fractured his leg by pulling the cabinet down on himself."[7]

Plaintiffs contend that J. M's records are relevant because they substantiate Balfour's version of events and "because they may provide written evidence showing Defendant was in fact informed of the danger the unsecured cabinet posed to J. M."[8]  Plaintiffs also assert the records are relevant because they go to the credibility of Defendant's agents who claim that J. M. had shown no propensity to pull on objects.  Finally, Plaintiffs argue that J. M.'s records should be produced because when Plaintiffs deposed the former Medical Director of the Alzheimer's Center, Dr. Ahmed

---

[7] Pretrial Order (doc. 185), ¶ 6.a.3.

[8] Plaintiffs' Reply (doc. 169) at p. 3.

4

Baig, he testified he could not answer the questions posed regarding patient J. M. without having had the opportunity to review J. M.'s medical records.

Defendant contends that the records are not relevant, arguing that, at most, they would only show the extent and/or nature of any harm that might have been caused to J. M. by the falling cabinet. Defendant points out that the essential elements of a whistleblower claim are as follows: (1) a reasonably prudent person would have concluded that the employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; (2) the employee reported the violation; (3) the employer had knowledge of the employee's reporting prior to discharging the employee; and (4) the employee was discharged in retaliation for making the report.[9] There is no requirement that the reported violation actually result in any harm to a third party or the public. Thus, according to Defendant, the records of J. M. have no relevance. Furthermore, Defendant states that it has already produced the incident report and forty-three pages of documents relating to the investigation that occurred in response to J. M. pulling the cabinet onto himself.

The request for J. M.'s records does not appear to be relevant on its face. Plaintiffs therefore have the burden to show how the records are relevant to any of their claims or any of Defendant's defenses. The Court cannot find that Plaintiffs have met this burden, except as to their contentions that the records may reveal that J. M. had a propensity to pull on things and that Defendant was aware of that propensity. The Court does not believe that such limited relevance requires Defendant

---

[9]*Palmer v. Brown,* 242 Kan. 893, 900, 752 P.2d 685 (1988).

to produce *all* of J. M's records for the entire two-year period January 2003 through January 2005.[10]

Moreover, Plaintiffs fail to explain what questions they posed to Dr. Baig during his deposition that led Dr. Baig to state he needed to review J. M.'s medical records. The Court is unable to determine whether that line of questioning was relevant and whether Dr. Baig's stated desire to review J. M's records supports Plaintiffs' need for the records.

In light of the above, the Court finds J. M.'s records to be irrelevant except to the extent they contain information indicating that J. M. had a propensity to pull on things or that Defendant had knowledge of such a propensity. The Court therefore sustains Defendant's relevance objection, except as to those documents that indicate J. M. had a propensity to pull on things or that Defendant had knowledge of the propensity. The Court will address Defendant's confidentiality objections to producing these documents in Part II.B, below.

### 3. Patient G. S.

Patient G. S. was a resident of the Alzheimer's Center from August 30, 2002 through May 20, 2004. Plaintiffs seek the records of G. S. for that entire period. Plaintiffs argue they are relevant because "Plaintiff Balfour alleges G. S. eloped from the facility and that defendants' agents, Cindy Frakes and [Mary] Baar threatened her nursing license if Balfour reported the elopement as required by Kansas law."[11] Plaintiffs further allege that Balfour's "stated desire to comply with the law contributed to her discharge."[12] Plaintiffs assert that Balfour needs G. S.'s records "to substantiate

---

[10]As noted above, Plaintiffs have agreed to limit this request to the two year period January 2003 through January 2005.

[11]Plaintiffs' Reply (doc. 169) at p. 4.

[12]*Id.*

6

that the elopement was not reported as required by law and to attack the credibility" of Frakes and Baar.[13]

The Court will deny the Motion to Compel as to these records. The request for these records is not relevant on its face. Plaintiffs therefore have the burden to show how they are relevant, a burden which Plaintiffs fail to meet. Plaintiff Balfour no longer makes any claim relating to the "elopement" of Patient G. S. in the Pretrial Order. In that Order,[14] which was filed after the parties completed their briefing on the Motion to Compel, Balfour asserts only claims for (1) state law wrongful discharge based on exercising her right to workers' compensation benefits, complaining about inadequate staffing, refusing "to perform the illegal act of keeping quiet about Defendant's neglect" of patient J. M., and complaining about Defendant's neglect that resulted in a cabinet falling on patient J. M.; and (2) wrongful discharge under section 510 of ERISA.[15]

It is well settled that the pretrial order supersedes all pleadings, establishes the issues for trial and controls the subsequent course of the case.[16] Because the pretrial order becomes the "controlling document for trial," any claims, issues, defenses or theories of recovery not included in the pretrial order—even if they appeared in the complaint—are waived.[17]

---

[13]*Id.*

[14]*See* Pretrial Order (doc.185).

[15]*Id*., ¶6.a.1, pertaining to Plaintiff Balfour.

[16]*Spiess v. Fricke*, 386 F. Supp. 2d 1178, 1189, n.16; (D. Kan. 2005); *Miller v. Pfizer, Inc.*, 196 F. Supp. 2d 1095, 1122 n.92 (D. Kan. 2002). *See also* Fed. R. Civ. P. 16(e) (the pretrial order "shall control the subsequent course of the action").

[17]*Wilson v. Muckala*, 303 F.3d 1207, 1215-16 (10th Cir. 2002).

As Balfour has asserted no claim that brings into play the treatment or care of G. S. or otherwise makes G. S.'s records relevant, there is no basis for the Court to find that G. S.'s records are discoverable. The Court therefore denies the Motion to Compel as to these records.

### 4. Patient C. O.

Patient C. O. resided at the Alzheimer's Center from September 18, 2003 through February 1, 2004. Plaintiffs contend C. O.'s records are relevant to Plaintiff Williams' claim relating to a co-worker running over C. O.'s foot with a wheelchair. Williams alleges that when she filed a report about the incident Defendant illegally destroyed it.[18] She asserts a claim for wrongful constructive discharge in violation of public policy, alleging that she was constructively discharged because she "blew the whistle on Defendant's illegal destruction of documents regarding and cover up of [C. O's] injury."[19] She also asserts a claim for wrongful discharge in violation of public policy, alleging that Defendant terminated her "because she refused to perform the illegal act of providing false information in a statement to be given to state investigators" concerning C. O.'s injury.[20]

Defendant argues that the request is, in general, irrelevant. It also argues that Plaintiffs fail to show how records for the entire five-month period are relevant to the one incident alleged.

The Court finds that Plaintiffs have failed to show how any records *preceding* C. O.'s foot injury would be relevant to Williams' claims. The Court therefore denies the Motion to Compel as to those records. The Court finds that the only records of C. O. that would have any relevance to Williams' wrongful discharge claims are those that concern the incident that resulted in C. O.'s foot

---

[18]Pretrial Order (doc. 185), ¶ 6.a.1. pertaining to Plaintiff Williams, at p. 13-14.

[19]*Id.*

[20]*Id.*, ¶6.a.2. pertaining to Plaintiff Williams, at p. 14.

8

injury. The Court will overrule Defendant's relevance objection as it applies to those records. The Court will address Defendant's confidentiality objections to producing these documents in part II.B below.

### 5. *Patient L. P.*

Patient L. P. resided at the Alzheimer's Center from January 13, 2003 to November 3, 2004. Plaintiffs assert that Defendant's Director of Nursing, Mary Baar, ordered, without authorization from a physician, that L. P. be administered saltpeter to curb his sexual libido. Clayborn claims she was terminated in part because she refused to administer saltpeter to L. P., as she believed the order was not authorized by L. P.'s doctor and was therefore illegal. She alleges that Defendant's actions give rise to a claim for wrongful discharge in violation of public policy.[21]

Baar testified in her deposition that Dr. Baig had authorized the administration of the saltpeter. Baar also testified that she had reviewed L. P.'s records in preparation for her deposition and that nothing in the records supported Plaintiffs' claim that Clayborn had refused to administer the saltpeter. Dr. Baig testified in his deposition that he could not answer questions about whether he had authorized the administration of saltpeter to L. P. or whether Clayborn had refused to administer saltpeter without reviewing L. P.'s medical records.

Plaintiffs claim the records of L. P. are relevant to Clayborn's public policy wrongful discharge claim. They also contend they are relevant because they go to Baar's credibility.

Defendant argues that Baar's credibility is not at issue, given that Barr was not the decisionmaker, i.e., she did not make, or participate in, the decision to terminate Clayborn. Defendant also argues that L. P.'s records are not relevant to Clayborn's *whistleblower claim*.

---

[21]*See* Pretrial Order (doc.185), ¶6.a.3 pertaining to Plaintiff Clayborn, at p. 12.

9

Defendant fails to explain, however, why these records are not relevant to Clayborn's *public policy discharge claim.*

The Court finds that L. P.'s records are relevant to Clayborn's public policy discharge claim, i.e., her claim that she was terminated for refusing to administer saltpeter to L. P. These records would reveal whether a doctor had authorized the administration of saltpeter and may also lead to the discovery of admissible evidence as to whether Clayborn had, on any occasion, refused to administer the saltpeter. The Court therefore overrules Defendant's relevance objection to the records regarding L. P. to the extent the records concern the administration of saltpeter to L. P. The Court does not find any of the other records concerning L. P. to be relevant, and will deny the Motion to Compel as to those records. The Court will address Defendant's confidentiality concerns in Part II.B. below.

      6.  *Patient N. F.*

Patient N. F. was a resident of the Alzheimer's Center from July 27, 2002 through August 17, 2004. In Plaintiffs' Complaint, Plaintiffs alleged that a patient died because Defendant's staff changed the doctor's orders to give the patient daily laxatives and stool softeners and that the patient may have died as a result.[22] In their briefing, Plaintiffs argue in a conclusory fashion that the medical records for that patient, N. F., are "directly relevant to plaintiffs' claims and to the credibility of Baar and other of defendant's agents."[23] In addition, Plaintiffs argue that these records are relevant and necessary because Dr. Baig testified in his deposition that he would need to review

---

[22]Complaint, ¶ 13.

[23]Plaintiffs' Reply (doc. 169) at p. 3.

10

N. F.'s records to determine whether the laxatives/stool softeners were discontinued and whether the discontinuation contributed to N.F.'s death.

As the relevancy of these records is not apparent from the face of the request, Plaintiffs have the burden to show how they are relevant. Plaintiffs have failed to meet that burden. Plaintiffs assert no claims in the Pretrial Order relating to this patient. While Plaintiffs may have asserted allegations relating to N. F. in their Complaint, the Pretrial Order supersedes the Complaint. As Plaintiffs fail to show how these records are relevant to any claim or allegation set forth in the Pretrial Order, the Court must sustain Defendant's relevance objections and deny the Motion to Compel as to N. F.'s records.

### B. Confidentiality

As the Court has overruled Defendant's relevance objections to producing certain records of L. P., J. M., and C.O., the Court must now examine the confidentiality objections that Defendant also asserts in response to these records requests.

As noted above, Defendant objected to producing these records on grounds that Plaintiffs have not obtained records releases from these patients, and Defendant is a health care provider with a legal duty to protect the confidentiality of patient health care information. Defendant bases its objections on three concerns: (1) the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); (2) the potential for injury to defendant's relationship with its patients and their families; and (3) doubts as to whether Plaintiffs would comply with any protective order that might be entered to protect the confidentiality of these records.

*1.     HIPAA concerns*

HIPAA is a complex piece of legislation that addresses the exchange of health-related information. As part of this legislation, Congress delegated to the Secretary of Health and Human Services ("HHS") the authority to make final regulations concerning the privacy of individually identifiable health information.[24] The relevant statutory provisions are found in 42 U.S.C. §§ 1320d and d-2 through d-7. These provisions set the standards by which certain medical or "individually identifiable health information" may be transmitted from health care providers, such as Defendant, to others. The term "individually identifiable health information" means any information that is "created or received by a health care provider" and "relates to the past, present, or future physical . . . health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual," that "identifies the individual" or "with respect to which there is a reasonable basis to believe that the information can be used to identify the individual."[25]

The Secretary of HHS has promulgated regulations to protect the privacy of this type of health information,[26] and has explicitly addressed whether protected health information may be disclosed during judicial proceedings.[27] The HHS regulations expressly allow health care providers to disclose protected health information without patient consent in the following situations: (1) in response to an order of a court or administrative tribunal, provided only the information specified

---

[24]*See* HIPAA, § 264(b), (c)(1), 110 Stat.1936, 2033, codified at 42 U.S.C. § 1320d-2 note.

[25]42 U.S.C. § 1320d(6).

[26]*See* 45 C.F.R. § 164.500, *et seq.*

[27]*See id.* § 164.512(e).

in the order is disclosed;[28] *or* (2) in response to a subpoena or discovery request that is not accompanied by an order of a court or administrative tribunal if the health care provider receives adequate assurance that the individual whose records are requested has been given sufficient notice of the request, or if reasonable efforts have been made to secure a protective order.[29]

Here, Defendant would be producing the records pursuant to this Court's order. Thus, the disclosure would be permitted under HIPAA, so long as Defendant produces only the information expressly authorized by the order.[30]

In light of the above, the Court finds that Defendant's HIPAA concerns do not form the basis for a valid objection to producing those particular records that the Court has deemed relevant.

### 2. *Potential for injury to the patient-health care provider relationship*

Defendant argues that even if HIPAA does not prohibit the production of these documents, the potential for injury to the relationship existing between Defendant and its patients and their family members outweighs the marginal relevance of these records. The Court is not persuaded by this argument, for several reasons. First, the Court cannot say that these records are only marginally relevant. Secondly, the Court is not persuaded that the relationship between Defendant and its

---

[28]*Id*. §164.512(e)(1)(i).

[29]*Id.* § 164.512(e)(1)(iii).

[30]Arguably, Defendant could redact certain information from the produced records in an attempt to take the records outside the protected scope of "individually identifiable health information" and, thus, outside the purview of HIPAA. Because Plaintiffs, however, have personal knowledge regarding the health conditions of these individuals that they gained in their capacity as caregivers for them, the records would arguably still be individually identifiable and thus still entitled to protection under HIPAA. *See id.* § 164.514(a) ("Health information that does not identify an individual and with respect to which there is no reasonable basis to believe that information can be used to identify an individual is not individually identifiable health information.").

former patients will be damaged, particularly if (1) Defendant redacts the names of the patients from the records and uses their initials instead, and (2) the records are produced pursuant to an appropriate protective order. (*See* discussion below regarding an appropriate protective order.) Third, Defendant has cited no law from this circuit that recognizes that the potential for injury to the health care relationship should override a litigant's legitimate need to discover relevant information.

### 3. *Concern that Plaintiffs will not comply with a protective order*

The parties have previously agreed to the terms of a protective order to protect the confidentiality of certain documents in this case.[31] Plaintiffs represent that in the event the Court directs Defendant to produce any of the requested patient records, Plaintiffs' counsel will strictly adhere to the terms of that protective order. Defendant, however, asserts that Plaintiffs' "past conduct" casts doubt on whether Plaintiffs would actually comply with the protective order. In support of this assertion, Defendant states that during the course of discovery, Plaintiffs themselves produced certain medical records of L. P., which "appear to have been removed from L.P.'s medical file without authorization."[32] Plaintiffs respond that those records "were placed in a plaintiff's home mail box by someone else after that plaintiff's employment with defendant had ended,"[33] and Plaintiffs were simply complying with the Federal Rules of Civil Procedure in producing them to Defendant.

The Court has no basis to disbelieve Plaintiffs' explanation. Furthermore, there is nothing in the record indicating that Plaintiffs or their counsel have ever failed to comply with the parties'

---

[31]*See* Stipulated Protective Order (doc. 62) filed Dec. 6, 2005.

[32]Def.'s Resp. to Plf.s' Mot. to Compel (doc. 165) at p. 9.

[33]Plf.s' Reply (doc. 169) at p. 2, n.1.

14

Stipulated Protective Order.  The Court therefore rejects Defendant's concern that Plaintiffs might not comply with an order protecting the confidentiality of the records at issue.

The Court notes that the Stipulated Protective Order already in place, by its terms, would apply to these patient records, in that Paragraph 2.E. of the Order defines "Confidential Information" as, *inter alia*, "[d]ocuments relating to or referencing any of Defendant's patients or clients, or the agents or representatives of such patients or clients."[34]  The Stipulated Protective Order provides that such Confidential Information "shall be utilized by [the party receiving the discovery] only for the prosecution or defense of this case."[35]  The Order identifies a narrow class of persons to whom the Confidential Information may be disclosed.[36]  It also provides that a party may mark Confidential Information as "Confidential Attorneys' Eyes Only," which even further limits disclosure to counsel, one designated corporate representative, and an expert witness.[37]

In light of the above, the Court finds that the Stipulated Protective Order should be sufficient to protect the confidentiality of these patient records, and the Court will overrule Defendant's confidentiality objections.  In the event, however, any party believes that the Stipulated Protective Order needs to be revised to better protect the confidentiality of the documents that the Court is ordering Defendant to produce, the parties shall attempt to agree to revisions to the Order to achieve that goal.  If agreement is reached, the parties shall submit the revised protective order to the Court no later than **five (5) days** before the date the records are to be produced.  In the event the parties

---

[34]Stipulated Protective Order (doc. 62), ¶2.E.

[35]*Id.* at ¶4.

[36]*Id.*

[37]*Id.* at ¶2.G.

are unable to agree upon the terms of a revised protective order, the party requesting the revisions shall file an appropriate motion to which the proposed revised protective order is attached. Said motion shall be filed no later than **ten (10) days** before the date the records are to be produced. The opposing party shall file a response to the motion **five (5) days** thereafter.

### III.    Summary of Ruling

The Court grants the Motion to Compel as to the records of patient J. M. to the extent Defendant must produce any records from the time period January 2003 through January 2005 which indicate that J. M. had or has a propensity to pull on things and/or that Defendant had knowledge of such a propensity. In addition, the Court grants the Motion to Compel as to the records of C. O. from the date that C. O.'s foot was injured to February 1, 2004, but only as to those records that concern the incident that resulted in C. O's foot injury. Finally, the Court grants the Motion to Compel as to the records of L. P., but only to the extent those records concern the administration of saltpeter to L. P.

These records shall be produced pursuant to an appropriate protective order, consistent with this Order. The Court denies the Motion to Compel as to all other records and in all other respects.

### IV.    Fees and Expenses

The Court will now consider the issue of attorney fees and expenses related to the filing of this motion. Federal Rule of Civil Procedure 37(a)(4) governs the award of fees and expenses in connection with motions to compel. Subsection (a)(4)(C) allows a court to impose sanctions where, as here, a motion to compel is granted in part and denied in part.[38] Under that rule, the court may

---

[38] *Cardenas v. Dorel Juvenile Group, Inc.,* 230 F.R.D. 635, 639 (D. Kan. 2005) (citing Fed. R. Civ. P. 37(a)(4)(C)).

"apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner."[39]

None of the parties has requested an award of any fees or expenses incurred in connection with the filing of Plaintiffs' motion, and the motion has been granted only in part. Under these circumstances, the Court does not find that an award of either fees or expenses would be appropriate. The Court therefore holds that each party should bear the expenses and fees that each has incurred in connection with this motion.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Discovery (doc. 160) is granted in part and denied in part, as set forth herein.

**IT IS FURTHER ORDERED** that Defendant shall, **within thirty (30) days of the date of this Order,** produce all documents required to be produced pursuant to this Order. Said production shall take place at the offices of Plaintiffs' counsel or at any other location agreed upon by the parties, and the documents shall be produced subject to the provisions of an appropriate protective order, as set forth herein..

**IT IS FURTHER ORDERED** that each party shall bear her/its own expenses and fees incurred in connection with the filing of Plaintiffs' Motion to Compel.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 25th day of August 2006.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

---

[39]*Id.*

17

cc: All counsel and *pro se* parties